UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X

In re:                                                    Chapter 11
                                                          Case Nos. 10-16879

**DUNKIN 36 II LLC**

                                                          **AFFIDAVIT PURSUANT TO LOCAL**
                          **Debtor.**                     **BANKRUPTCY RULE 1007-2 AND IN**
                                                          **SUPPORT OF FIRST DAY MOTIONS**
                                                          **AND APPLICATIONS**

-------------------------------------------------X

STATE OF NEW YORK)
                                 ss;
COUNTY OF NEW YORK)

Behrooz Hedvat, being duly sworn, deposes and says:

1.        I am a member of Dunkin 36 LLC ("Dunkin"), Dunkin 36 I LLC ("Dunkin I") and Dunkin 36 I LLC ("Dunkin II"). Hereinafter Dunkin, Dunkin I and Dunkin II shall be collectively referred to as the "Debtors". The Debtors are limited liability companies formed under the laws of the state of New York. This affidavit is submitted pursuant to Local Bankruptcy Rule 1007-2.

2.        On December 30, 2010 (the "Filing Dates"), Dunkin commenced a case under Title 11 or the United States Code (the "Code") simultaneously therewith Dunkin I and Dunkin II commenced their chapter 11 cases. No trustee or examiner has been appointed.

3.        Each of the Debtors own a building located on Broadway in New York, New York. Dunkin owns a 6 story building located at 4060 Broadway that has no elevator, has a live-in super and contains 37 residential and 6 commercial units. Dunkin I owns a 6 story building located at 3750 Broadway that has an elevator, a live-in super and contains 37 residential and 5 retail units. Dunkin II owns a building located at 3600 Broadway, does not have an elevator or a live-in super and contains 19 residential and 3 commercial units. Hereinafter the properties located at 4060 Broadway, 3750 Broadway and 3600 Broadway shall be collectively referred to as the Real Property.

4.      The sole members of Dunkin and Dunkin II are Behrooz Hedvat and Faramar Hedvat (collectively, the "Hedvats") each of whom holds a 49.75% membership in those debtors with a third entity, Five Rocks, Inc. which holds a .5% membership in those debtors, the sole shareholder of which is Behrooz Hedvat. The members of Dunkin I are the Hedvats, each of whom holds a 37.25% membership interest, Five Rocks, Inc. which holds a .5% membership interest and Payam Farahn, who owns a 25% membership interest in that debtor.

5.      Dunkin and Dunkin I acquired their real property on October 11, 2005 for $7,150,00 and $7,350,00, respectively. Dunkin II acquired its real property on September 21, 2005 for the sum of $4,125,000.

6.      The Real Property was acquired through a consolidated mortgage loan in the amount of $12,500,000 from Intervest National Bank ("Intervest"). On July 26, 2007 the Debtors obtained a subordinated loan from Intervest in the amount of $1,928,356. Intervest assigned both mortgages to VFC Partners 4 LLC on May 21, 2010 and VFC Partners 4 LLC assigned said mortgages to Dunkin Lender LLC (the "Sponsor") on September 24, 2010. In order to obtain additional funds to cover the Debtors' losses, on September 26, 2008, the Debtors borrowed $450,000 from St. Nicholas Asset Resources LLC, which mortgage was assigned to Covenant Asset Resources, Ltd. on May 26, 2010 (the "Subordinate Secured Lender"). As a result there are two mortgages on the Real Property, the first mortgage in the amount of $16,071,968.22 held by the Sponsor which holds a senior mortgage in the amount of $14,013,534.28 and a junior mortgage in the amount of $2,058,433.94. There is also a subordinate mortgage, held by the Subordinate Secured Lender in the principle amount of $450,000, plus interest.

2

7.      The Debtors' managing agent, Vorillas, Inc. located in Astoria, New York has been managing and supervising the daily operations of the Real Property for the two years prior to the Filing Date.  The Real Property has been confronted with increases in their real estate taxes, water assessments and fuel costs.  The recession that occurred during 2007 and 2008 required the obtaining of a loan from the Subordinate Secured Lender because the commercial tenants fell behind in the payment of their rent, leaving no funds available for the renovation and re-rental of vacant units.  There are presently 6 units that remain vacant.

8.      The Debtors commenced the chapter 11 cases to fulfill and complete their obligations under the Plan Support and Acceptance Agreement (Exhibit "1" hereto), between the Debtors, their members, and the Sponsor, pursuant to which the Sponsor is to pay scheduled unsecured and Lis Pendens Claims against the Debtors in full, following confirmation of the Debtors' Plan of Reorganization (the "Plan") in exchange for the Debtors' transfer of title to the Real Property to the Sponsor.  In order to obtain the Sponsor's cooperation, Behrooz Hedvat, a member of each of the Debtors and of Bridgebar LLC (a non-debtor), has agreed to grant the Sponsor a mortgage on premises located at 492-502 Fort Washington Avenue, a/k/a 750-798 West 183rd Street, New York, New York (the "Bridgebar Property"), which will enable the Sponsor to fund the Plan through a discount that the Sponsor has agreed to grant in reduction of the Bridgebar mortgage.

9.      A list of the names, addresses and telephone numbers of the holders of the twenty (20) largest unsecured claims against the Debtor, excluding insiders, is annexed hereto as Exhibit "2".

3

10.     Annexed hereto as Exhibit "3" is a list of pending litigation against the Debtor, including Lis Pendens litigation.

11.     None of the Real Property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor or agent for any such entity. The Debtors have minimal cash on hand as of the Petition Date, but have been able to pay most of their expenses through the cash flow available from the rents they receive from their tenants.

12.     Annexed hereto as Exhibit "4" is a list of the Debtors' leases for each of the buildings constituting the Real Property as well as the term of each lease and the current rental thereunder.    Annexed hereto as Exhibit "5" is a schedule setting forth the individuals involved in the management of the Debtors, together with a brief description of their responsibilities.    Annexed hereto as Exhibit "6" is a copy of the membership resolutions authorizing the filing of these chapter 11 cases.

13.     The Debtors currently employ approximately 3 individuals each of whom work on a full time basis.  The salaries of the superintendants who live at 4060 and 3750 Broadway are $16,250 and $16,640 per year, respectively.  In addition said employees reside in an apartment at each of said buildings on a rent free basis.  The superintendant who maintains 3600 Broadway receives a salary of $11,250 per year.  From and after the filing Date I shall receive no draw from the Debtors, but I shall be reimbursed expenses incurred on behalf of the Debtors.

14.     The Debtors intend to continue to operate and manage the Real Property following the Filing Date.  It is estimated that the gross income from the Real Property will

4

approximate $125,000 per month. Payroll to employees, exclusive of members of the Debtors through the thirty-day period following the petition date will approximate $6,000. The combined operating expenses of the Real Property, including management fees, fuel, supplies and other charges are estimated to aggregate $118,000 for the 30 day period.

15.     The Debtors maintain an office at 3 Moline Court, Great Neck, New York 11024. It is anticipated that for the thirty-day period following the petition date, cash receipts shall be sufficient to pay estimated cash disbursements, accordingly, the Debtor should be operating on a break-even basis during the pendency of these cases.

16.     The Debtors submit that it is in their best interests and the best interests of all of their creditors that they be continued in the management of the Real Property while they complete their obligations under the Plan Support and Acceptance Agreement in accordance with the provisions of the Bankruptcy Code.

Dated:  New York, New York
        December 30, 2010

Behrooz Hedvat, Managing Member of each
Of the Debtors

        I, Behrooz Hedvat, a member of each of the Debtors, certify under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Behrooz Hedvat

# EXHIBIT 1

# EXHIBIT 1

## PLAN SUPPORT AND ACCEPTANCE AGREEMENT

This PLAN SUPPORT AND ACCEPTANCE AGREEMENT is made and entered into as of December 30, 2010 (the "**Agreement**") by and among: Dunkin Lender LLC (the "**Sponsor**"), an affiliate of Madison Capital LLC ("**Madison Capital**"), HWH Uptown LLC ("**HWH**"), Dunkin 36 LLC, Dunkin 36 1 LLC and Dunkin 36 2 LLC (each a "**Company**" and collectively, "**Dunkin 36**"), Behrooz Hedvat ("**BH**"), Fahrmarz Hedvat ("**FH**"), Payam Farahan ("**PH**") Covenant Asset Resources LLC (the "**Subordinated Lender**", and collectively with the Sponsor and HWH, the "**Participating Creditors**"). Each of the Dunkin 36, BH, FH and the Participating Creditors may hereinafter be individually referred to herein as a "**Plan Support Party**", and collectively as the "**Plan Support Parties**".

## RECITALS

A.    Sponsor acquired claims under certain notes secured by mortgages (the "**Senior Claims**") on the real estate (the "**Dunkin Real Estate**") owned by Dunkin 36.

B.    Sponsor has informed the parties hereto that it sold the Senior Claims to HWH pursuant to a repurchase agreement under which Sponsor has the right to repurchase the Senior Claims.

C.    Dunkin 36 owes $450,000 to the Subordinated Lender.

D.    Dunkin 36 owes an aggregate of approximately $38,000 to the service suppliers and creditors of Dunkin 36 other than the Sponsor and the Subordinated Lender (the "**Trade Creditors**").

E.    The Participating Creditors constitute over 50% of the holders of each class of Company indebtedness and own claims constituting more than 66⅔% in dollar amount of each class of all such claims.

F.    BH, PH and FH own all the equity interest in Dunkin 36 and consequently own 100% of the equity claims of Dunkin 36.

G.    The Companies plan to file voluntary petitions which will be consolidated (collectively, the "**Petition**") for relief under Chapter 11 of Title 11, United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Court**") initiating bankruptcy cases (as consolidated, the "**Bankruptcy Case**").

H.    Dunkin 36 and Sponsor have agreed that Sponsor shall be the sponsor of the Dunkin 36 Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, in the form annexed hereto as Appendix A (the "**Plan**"). Under the terms of the Plan, Sponsor will become the successful plan sponsor (the "**Successful Plan Sponsor**"). If Sponsor becomes the Successful Plan Sponsor, Sponsor will on the Effective Date of the Plan (the "**Effective Date**") acquire substantially all of Dunkin 36's assets and assume certain of its liabilities in exchange for the consideration set forth in the Plan.

I.    Dunkin 36 has prepared and will file the disclosure statement (the "**Disclosure Statement**") associated with the Plan in the form annexed hereto as Appendix B.

J.    Dunkin 36 has determined that the transactions contemplated by the Agreement are in the best interests of the various parties-in-interest (including its creditors).

K. Prior to the Petition Date (as defined herein), Dunkin 36 will solicit certain votes in support of the Plan (the "**Solicitation**") pursuant to sections 1125, 1126 and 1145 of the Bankruptcy Code and other applicable law.

L. Each Plan Support Party has reviewed, or has had the opportunity to review, the Plan, the Disclosure Statement, the Agreement and the other documents referenced herein and therein with the assistance of professional legal advisors of its own choosing.

M. Each Plan Support Party desires to support the Plan, and Dunkin 36 desires to obtain the commitment of all of the Plan Support Parties to support the Plan, in each case subject to the terms and conditions set forth herein.

N. Each Plan Support Party has executed a ballot voting for the Plan substantially in the form attached hereto as <u>Appendix C</u> (the "**Ballot**") and delivered such Ballot to Dunkin 36.

O. Simultaneously herewith, Bridgebar LLC ("**Bridgebar Owner**"), an affiliate of Hedvat that owns certain real estate (the "**Bridgebar Real Estate**"), and Bridgebar Lender LLC ("**Bridgebar Lender**"), an affiliate of Madison Capital which acquired certain notes secured by a first mortgage on the Bridgebar Real Estate (the "**Bridgebar Claims**"), have entered into an agreement substantially in the form attached hereto as <u>Appendix D</u> (the "**Bridgebar Agreement**") which provides for purchase at Bridgebar Owner's option of the Bridgebar Claims at a discount (the "**Bridgebar Discount**") in the event the transactions contemplated in this Agreement are timely consummated.

P. Sponsor has informed the parties hereto that Bridgebar Lender sold the Bridgebar Claims to HWH pursuant to a repurchase agreement under which Bridgebar Lender has the right to repurchase the Bridgebar Claims.

Q. Subject to execution of definitive documentation and appropriate approvals by the Bankruptcy Court of the Plan and the Disclosure Statement, the following sets forth the agreement by and among the Plan Support Parties concerning their respective obligations.

**NOW, THEREFORE**, in consideration of the foregoing and promises, mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each Plan Support Party, intending to be legally bound hereby, agrees as follows:

1. <u>Milestones</u>. The Plan Support Partners agree to use commercially reasonable efforts to achieve each of the following milestones (the "**Milestones**"):

(a) Dunkin 36 will file the Petition on or before December 31, 2010 (the "**Petition Date**"),

(b) The Plan and Disclosure Statement, as revised with the consent of Sponsor, shall be properly filed in the Bankruptcy Case by December 31, 2010,

(c) Notice of Hearing re: Motion to Approve Combined Disclosure Statement/Confirmation Hearing will be sent by January 17, 2011,

(d) The Disclosure Statement shall be approved by the Court by February 28, 2011,

(e)    A Confirmation Order for the Plan shall be entered no later than March 15, 2011 and shall provide (a) for an Effective Date no later than March 31, 2011 (or such later date as the Court requires), and (b) authority for Dunkin 36 to close under the Plan, without stay pending any appeal of the Confirmation Order, by March 31, 2011, and

(f)    The Closing under the Plan shall occur by March 31, 2011.

The parties agree that time is of the essence; *provided that* each of the Milestones may be extended by Sponsor in its sole discretion, but in no event shall such extension exceed June 15, 2010, without the prior written consent of the Plan Support Parties. The parties further agree that if any of the Milestones above, including failure to obtain entry of a Confirmation Order for the Plan by March 31, 2011, is not timely achieved because Dunkin 36 failed to use its commercially reasonable efforts, Dunkin 36 will promptly seek to sell its assets pursuant to Section 363 of the Bankruptcy Code, subject to higher and better offers, and, in any such 363 sale, Sponsor may credit bid its claims against Dunkin 36, including the Senior Claims, to purchase the Dunkin Real Estate, *provided however* that Sponsor must also pay cash in such 363 sale to the extent of the professional fee administrative expenses relating to the Plan (not exceeding $100,000) (such cash portion, the "**363 Cash Portion**").

2.    <u>Agreement to Vote and Plan Support</u>.  Upon execution of the Agreement, each Plan Support Party shall deliver to the Sponsor its duly executed and completed Ballot accepting such Plan for delivery to the Court upon the commencement of the solicitation under the Plan. Under the Plan, subject to the terms and conditions contained in the Agreement and as long as (x) the Agreement has not been terminated in accordance with the terms hereof and (y) Sponsor is not in default under this Agreement, each Plan Support Party, as applicable, agrees to perform and comply with the following obligations with respect to the Plan, subject to (i) approval of the Disclosure Statement and other solicitation materials in respect of the Plan by the Bankruptcy Court as complying with section 1126(b) of the Bankruptcy Code (collectively, the "**Consent Solicitation Materials**"), and (ii) such Plan Support Party being entitled under such Plan to vote to accept or reject the Plan:

(a)    (i)    not to change or withdraw (or cause to be changed or withdrawn) such vote; and

(ii)    not to assign to a third party its claims against Dunkin 36;

(b)    to support, and use its good faith diligent efforts to promote, the confirmation and consummation of the Plan;

(c)    not pursue, propose, support, vote its claims in favor of, recommend, or encourage the pursuit, proposal or support of (i) any Chapter 11 plan for Dunkin 36 other than the Plan or (ii) any other restructuring or reorganization for, or the liquidation of, any of Dunkin 36 (directly or indirectly) in the Bankruptcy Cases);

(d)    not to, in any material respect, (directly or indirectly or encourage others to), object to, delay, impede or take any other action to interfere with acceptance or implementation of the Plan; and

(e)    for the avoidance of doubt, unless the Agreement is terminated in accordance with its terms, not to take any action that would, in any material respect, (directly or indirectly or encourage others to) interfere with, delay or postpone the confirmation or consummation of the Plan; *provided, however*, that, except as otherwise expressly set forth in the Agreement, the foregoing prohibition will not limit any Plan Support Party's rights under applicable law or under any agreement

with Dunkin 36 (including the exercise of any available remedies, and its rights under any applicable bankruptcy, insolvency, foreclosure or similar proceeding, including, without limitation, its right to appear and participate as a party in interest in any matter to be adjudicated in any case under the Bankruptcy Code concerning Dunkin 36 so long as such appearance and the positions advocated in connection therewith are not materially inconsistent with the Plan and are not for the purpose of hindering, delaying or preventing the consummation of the Transactions).

3.     Exclusivity.  For a period commencing on the date of the Agreement and ending on the earlier of (a) the Effective Date, (b) March 31, 2011, (c) the date on which the Bankruptcy Court enters an order denying approval of the Plan or the Disclosure Statement, (d) the date on which the Bankruptcy Court enters an order declaring a party other than Sponsor the Successful Plan Sponsor, or (e) the date the Agreement is terminated pursuant to Section 4 hereof (the "**Exclusivity Period**"), the Plan Support Parties (other than Dunkin 36) will immediately cease and cause to be terminated any ongoing discussions or negotiations with respect to any other offer or proposal other than the Plan, and Dunkin 36 will not directly or indirectly, solicit, initiate or entertain offers from, negotiate with, or in any manner encourage or accept any proposal of any person or entity other than Sponsor relating to the acquisition or reorganization of Dunkin 36, their assets or business, in whole or in part, whether directly or indirectly, through purchase, sale, merger, consolidation, reorganization, similar transaction or otherwise.  During the Exclusivity Period, each Plan Support Party will immediately (i) notify the other Plan Support Parties orally and in writing regarding any contact between such Plan Support Party and any other person regarding any such offer or proposal or any related inquiry; and (ii) provide the other Plan Support Parties with any written, offers or inquiries, together with any written response thereto.

4.     Termination.

(a)     The Agreement shall terminate and all obligations of the Plan Support Parties shall immediately terminate and be of no further force and effect (without notice or any further action by any Plan Support Party) as follows:

(i)     with the mutual written consent of all the Plan Support Parties at any time;

(ii)     upon the giving of written notice of termination by one Plan Support Party to the other Plan Support Parties following any material breach by another Plan Support Party of the representations or agreements contained herein, if such breach has continued uncured for three (3) calendar days after receipt of written notice of such breach;

(iii)     if any court of competent jurisdiction shall declare, in a final, non-appealable order, the entirety of the Agreement to be unenforceable;

(iv)     at the option of any of the parties if the Effective Date of the Plan has not occurred by the first business day after the conclusion of the Exclusivity Period;

(v)     upon the dismissal of the Bankruptcy Case or the conversion of the Bankruptcy Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code;

(vi)     if the Exclusivity Period ends in accordance with Section 3 hereof; and

(vii)     if the Court enters a final order confirming any plan of reorganization for Dunkin 36 other than the Plan.

(b)     Upon any termination of the Agreement in accordance with the terms of this Section 4, the Agreement shall become void and of no further force or effect, each Plan Support Party shall be released from its commitments, undertakings and agreements under or related to the Agreement, and there shall be no liability or obligation on the part of any Plan Support Party, provided however that in no event shall any such termination relieve a Plan Support Party from liability from its breach or non-performance of its obligations hereunder prior to the date of such termination.

5.     Modification of Agreement; Waivers. The Agreement and the terms of the Plan shall not be modified, amended, altered or superseded, and the terms and conditions of the Agreement may not be waived, except by a written instrument signed by the Plan Support Parties; except that the Sponsor may amend this Agreement in accordance with Section 1127 of the Bankruptcy Code, provided such amendments would not adversely affect the other Plan Support Parties. No delay on the part of any Plan Support Party in exercising any right, power or privilege pursuant to the Agreement will operate as a waiver thereof, nor will any waiver on the part of any party of any right, power or privilege pursuant to the Agreement, or any single or partial exercise of any right, power or privilege pursuant to the Agreement, preclude any other or further exercise thereof or the exercise of any other right, power or privilege pursuant to the Agreement.

6.     Filing Date; Review of Plan, Disclosure Statement and Bridgebar Agreement. Each Plan Support Party hereby acknowledges that (i) such Plan Support Party has reviewed and understood the Plan, Disclosure Statement and Bridgebar Agreement, (ii) the Plan and Disclosure Statement will be filed with the Court no later than December 31, 2010 and (iii) that the Bridgebar Lender and Bridgebar Owner may modify the amount of the Bridgebar Discount based on administrative expenses under the Plan, the 363 Cash Portion, if any, or changes in the terms of the Plan. Each Plan Support Party further acknowledges that no securities of Dunkin 36 are being offered or sold hereby and that the Agreement does not constitute an offer to sell or a solicitation of an offer to buy any securities of Dunkin 36.

7.     Representations and Warranties of the Plan Support Parties. Each Plan Support Party represents and warrants to the other Plan Support Parties that the following statements are true, correct and complete as of the date hereof:

(a)     Power and Authority. Such Plan Support Party has all requisite power and authority to enter into the Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, the Agreement.

(b)     Authorization. The execution and delivery of the Agreement by such Plan Support Party and the performance of its obligations hereunder have been duly authorized by all necessary action on its part.

(c)     Binding Obligation. Upon execution, the Agreement and the Ballot are the legally valid and binding obligation of such Plan Support Party and its respective successors and assigns, enforceable against each of them in accordance with terms hereof and thereof.

(d)     Ownership of Claims. Each Participating Creditor has a valid claim against Dunkin 36 in the amount and as described on Schedule 7(d).

8.     Representations and Warranties of each Company.

(a)     Consents and Approvals. No consent, approval, authorization, order, registration or qualification of or with any court or governmental agency or body having jurisdiction over each

Company or any of its properties is required for the execution and delivery by such Company of the Agreement, related agreement or the Plan and performance of and compliance by such Company with all of the provisions hereof and thereof and the consummation of the transactions contemplated herein and therein, except as required by the Court.

(b)    Absence of Certain Changes.  Except as set forth on Schedule 8(b), since August 1, 2010, except for actions to be taken pursuant to the Agreement and the Plan, each Company represents and warrants:

(i)    there has not been any material change in the capital stock or equity or other ownership interests or any material change in long-term debt of Dunkin 36 or any material dividend or distribution of any kind declared, set aside for payment, paid or made by Dunkin 36 on any class of capital stock;

(ii)    no event, fact or circumstance has occurred which has had or would reasonably be expected to give rise to, individually or in the aggregate, a material adverse change;

(iii)    Dunkin 36 has not entered into any contract, agreement or arrangement that will be in effect on the Effective Date and that (A) has, or that Dunkin 36 reasonably expects to have, any future liability for payments in excess of the amounts provided in a budget to be prepared by Dunkin 36, reasonably acceptable to the Sponsor, (B) is not terminable by Dunkin 36 by notice of not more than ninety (90) days and (C) was not entered into in the ordinary course of business;

(iv)    Dunkin 36 has not made any material changes with respect to accounting policies or procedures, except as required by law or changes in GAAP;

(v)    Dunkin 36 has not paid, discharged, waived, compromised, settled or otherwise satisfied any material legal proceeding, whether now pending or hereafter brought, (A) at a cost materially in excess of the amount accrued or reserved for it, (B) pursuant to terms that impose material adverse restrictions on the business of Dunkin 36 as currently conducted or (C) on a basis that reveals a finding or an admission of a material violation of law by Dunkin 36; and

(vi)    Dunkin 36 has not waived any material right, claim or debt.

(c)    Designated Contracts.  Except as otherwise provided herein and subject to the payment of any required cure costs as set forth on Schedule 8(c), on and as of the Effective Date, each contract listed on Schedule 8(c) (the "**Designated Contracts**") (i) shall be a legal, valid and binding obligation of Dunkin 36, to the extent a party thereto, and each other party thereto (subject to bankruptcy laws), (ii) to the knowledge of Dunkin 36, shall be in full force and effect and (iii) shall be enforceable against Dunkin 36, to the extent a party thereto, and each other party thereto (subject to bankruptcy laws) in accordance with its terms; and, other than a breach or default that occurred as a result of the filing of the Bankruptcy Case, with respect to each Designated Contract, (x) Dunkin 36, to the extent a party thereto, is not in material default or breach of such Designated Contract, (y) there does not exist any event, condition or omission that would constitute such a default or breach, whether by lapse of time or notice or both and (z) there are no regulatory or other governmental order, actions or the like pending in respect of such Designated Contract.  To the knowledge of Dunkin 36, no party to any Designated Contract is in material breach or default of such Designated Contract, has repudiated any material provision thereof or terminated any Designated Contract.

(d)　Pending Litigations or Causes of Action.  Except as set forth on Schedule 8(d), there is no action, suit, proceeding or investigation pending or, to the knowledge of Dunkin 36, threatened or affecting Dunkin 36 or any of the properties, assets or businesses of Dunkin 36, which, individually or in the aggregate, would reasonably be expected to result in a material adverse change or which questions the validity of any action taken or to be taken by Dunkin 36 pursuant to or in connection with the Agreement.

(e)　No Broker's Fees.  Dunkin 36 is not a party to any contract, agreement or understanding with any Person (other than the Agreement) that would give rise to a valid claim against Dunkin 36 for a brokerage commission, finder's fee or like payment in connection with the Investment.

(f)　Title to Personal Property.  The assets of Dunkin 36 include all of the properties, assets and rights that are currently used in, or are material or necessary for, the conduct of the Business of Dunkin 36 (collectively, the "**Business Assets**").  Upon the Effective Date, all of the rights, title and interests in and to the Business Assets shall vest in the Sponsor free and clear of all mortgages, pledges, liens, security interests, claims, restrictions or encumbrances of any kind, except as provided in the Plan.

(g)　Compliance with Environmental Laws.  Except as provided on Schedule 8(g), Dunkin 36 is in compliance with all applicable environmental laws (including New York City HPD and related rules), except for such noncompliance as would not reasonably be expected to result in material liabilities under such environmental laws.

(h)　Insurance.  Dunkin 36 has insurance covering its properties, operations, personnel and businesses, including, without limitation, business interruption insurance, which insurance is in amounts and insures against such losses and risks as are customary for companies whose businesses are similar to Dunkin 36's.  Dunkin 36 (i) has not received written notice from any insurer or agent of such insurer that capital improvements or other expenditures are required or necessary to be made to continue such insurance or (ii) does not have any reason to believe that it shall not be able to renew its existing insurance coverage as and when such coverage expires or to obtain similar coverage at reasonable cost from similar insurers as may be necessary to continue its business.

(i)　Alternate Transactions.  As of the date hereof, Dunkin 36 is not party to any binding commitment to pursue, implement or effectuate any transaction inconsistent with the transactions contemplated by the Agreement.

(j)　Labor Relations.

(i)　Dunkin 36 is not a party to, or bound by, any material collective bargaining agreement, contract or other agreement or understanding with a labor union or labor organization;

(ii)　Dunkin 36 is not the subject of any material proceeding asserting that it or any subsidiary has committed an unfair labor practice or sex, age, race or other discrimination or seeking to compel it to bargain with any labor organization as to wages or conditions of employment;

(iii)　there are no material current or, to the knowledge of Dunkin 36, threatened organizational activities or demands for recognition by a labor organization seeking to represent employees of Dunkin 36 or any and no such activities have occurred during the past 12 months;

7

(iv)     no material grievance, arbitration, litigation or complaint or, to the knowledge of Dunkin 36, investigations relating to labor or employment matters is pending or, to the knowledge of Dunkin 36, threatened against Dunkin 36;

(v)     Dunkin 36 has complied and is in compliance in all material respects with all applicable laws (domestic and foreign), except for municipal violations and similar infractions, and certain uncompleted obligations relating to contract work performed by a superintendent for renovation to an apartment agreements, contracts, and policies relating to employment, employment practices, wages, hours, and terms and conditions of employment and is not engaged in any material unfair labor practice as determined by the National Labor Relations Board (or any foreign equivalent); and

(vi)     Dunkin 36 has complied in all material respects with its payment obligations to all employees of Dunkin 36 in respect of all wages, salaries, commissions, bonuses, benefits and other compensation due and payable to such employees under any agreement, plan, program or any statute or other law.

(k)     Compliance With ERISA. Except as set forth on Schedule 8(k), Dunkin 36 does not maintain, contribute to, or participate as a party to, (i) any "employee benefit plan," as defined in Section 3(3) of ERISA, or (ii) any other written, unwritten, formal or informal plan or agreement involving direct or indirect compensation other than workers compensation, unemployment compensation and other government programs, under which a Debtor has any present or future obligation or liability with respect to any employees. Dunkin 36 has not been a party to or sponsored a multi-employer plan or a defined benefit plan. Dunkin 36 and all fiduciaries of such plans have fully complied with their obligations and all duties under ERISA. There has been no prohibited transaction under Section 4975 of the Code or Section 406 or ERISA or otherwise with respect to any such plan. Each such plan has been maintained in accordance with applicable laws and in compliance with its terms. Dunkin 36 has no current or future liabilities with respect to post-employment or post-retirement benefits for former or retired employees.

(l)     Certain Liabilities. Except as set forth on Schedule 8(l), Dunkin 36 has paid timely all water/sewer charges and real estate taxes, and there are no disputes concerning such charges.

9.     Covenants of Dunkin 36.

(a)     Promptly upon execution of this Agreement, Dunkin 36 will retain and be managed by a managing agent reasonably acceptable to Sponsor in its sole discretion with sole responsibility for managing the business of Dunkin 36.

(b)     Dunkin 36 shall reserve all cash flow from its operations (net of ordinary and necessary building expenses, including legal fees) in a segregated interest-bearing cash collateral account solely for the purpose of paying real estate tax obligations on the Dunkin Real Estate.

10.     Effectiveness. The Agreement shall not become effective and binding on any of the Plan Support Parties unless and until a counterpart signature page to the Agreement has been executed and delivered by each of the Plan Support Parties.

11.     Governing Law; Jurisdiction. The Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflict of laws of the State of New York. Each Plan Support Party

irrevocably and unconditionally agrees that the Bankruptcy Court will retain exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of the Agreement.

12. Headings. The headings of the paragraphs and subparagraphs of the Agreement are inserted for convenience only and shall not affect the interpretation hereof.

13. Prior Negotiations. The Agreement supersedes all prior negotiations with respect to the subject matter hereof.

14. No Third-Party Beneficiaries. Unless expressly stated herein, the Agreement shall be solely for the benefit of the Plan Support Parties, and no other person or entity shall be a third party beneficiary hereof.

15. Severability. Any provision of the Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

16. Indemnification of Sponsor. Each Plan Support Party indemnifies and will hold Sponsor and its affiliates and personnel harmless from and against any and all liabilities, claims, demands, actions, suits, legal or administrative proceedings, losses, actual and punitive damages, injury to person or property and reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) relating to the investigation of, preparation for and defense of any of the foregoing, to the extent they arise out of (directly or indirectly) any breach of any representation, warranty, or covenant in the Agreement by such Plan Support Party or otherwise arising from an act or omission of such Plan Support Party, its affiliates or personnel; provided that Dunkin 36 shall not be liable for indemnification for Claims based on tenants' rights under Designated Contracts.

17. Specific Performance by Plan Support Parties. Each Plan Support Party recognizes and acknowledges that a breach of any covenants or agreements contained in the Agreement will cause the other Plan Support Parties to sustain damages for which it would not have an adequate remedy at law for money damages, and therefore each Plan Support Party agrees that in the event of any such breach the other Plan Support Party shall be entitled to the remedy of specific performance of such covenants and agreements and injunctive and other equitable relief in addition to any other remedy to which the other Plan Support Party may be entitled, at law or in equity.

18. Rights and Remedies. The rights and remedies provided pursuant to the Agreement are cumulative and are not exclusive of any rights or remedies which any party otherwise may have at law or in equity.

19. Successors and Assigns. The Agreement is intended to bind and inure to the benefit of the Plan Support Parties and their respective successors, permitted assigns, heirs, executors, administrators, and representatives; provided that this Agreement and any of the rights, interests or obligations hereunder may be assigned by the Sponsor to a third party or parties who is as financially capable as the Sponsor and who agrees to be bound by the obligations set forth in this Agreement.

20. Notices. All notices hereunder shall be deemed given if in writing and delivered, if sent by (a) (i) telecopy or (ii) e-mail (to the extent an e-mail address is provided below), and (b) either courier or by registered or certified mail (return receipt requested) to the following addresses, telecopier numbers and/or e-mail addresses (or at such other addresses, telecopier numbers or e-mail addresses as shall be specified by like notice):

(1)     if to Sponsor, to:

Madison Capital
55 East 59th Street,17th Floor
NY, NY 10022
Email:  jm@mcapny.com
Telephone: (212) 759-2352
Facsimile: (212) 759-8980
Attention: Jared Minatelli

with copies (which shall not constitute notice) to:

Gilbert Backenroth, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, New York 10022
Email:          gbackenroth@hahnhessen.com
Telephone:      212-478-7200
Facsimile:      212-478-7400

And to special counsel for Sponsor:

[to come]
Email:
Telephone:
Facsimile:

if to Dunkin 36, to:
Dunkin 36
c/o Behrooz Hedvat
3 Moline Court
Great Neck, New York 11024
Email:  baydeal@aol.com
Telephone: 917-545-2695
Facsimile:  516-908-4414

with copies (which shall not constitute notice):

Marilyn Simon, Esq.
Marilyn Simon & Associates
280 Madison Avenue
New York, New York 10003
Telephone:      212-759-7909
Email:  msimon@msimonassoc.com

And
Michael N. Coritsidis, Esq.
Coritsidis & Lambros, PLLC
46 Trinity Place
New York, New York 10006

Telephone 212-797-4600
Email Michael@corilamb.com

(3)     if to Hedvat or Participating Creditors, to the address set forth on
the signature page hereof, with a copy to:

Michael N. Coritsidis, Esq.
Coritsidis & Lambros, PLLC
46 Trinity Place
New York, New York 10006
Telephone 212-797-4600
Email Michael@corilamb.com

Any notice given by delivery, mail or courier shall be effective when received.  Any notice given by
telecopier or e-mail shall be effective upon oral or machine confirmation of receipt.  The address of notice
for each Plan Support Party may be changed by notice in accordance with this Section 17 to the other
Plan Support Parties.

21.     Counterparts.  The Agreement may be executed in one or more counterparts, each of
which shall be deemed an original and all of which shall constitute one and the same Agreement.
Delivery of an executed signature page of the Agreement by facsimile, electronic transmission or in
portable document format (PDF) shall be effective as delivery of a manually executed signature page of
the Agreement.

22.     Representation by Counsel.  Each Plan Support Party acknowledges that it has been
represented by counsel in connection with the Agreement and the transactions contemplated by the
Agreement.  Accordingly, any rule of law or any legal decision that would provide any Plan Support
Party with a defense to the enforcement of the terms of the Agreement against such Plan Support Party
based upon lack of legal counsel shall have no application and is expressly waived.

23.     Construction.  In the Agreement, unless the context otherwise requires:

(a)     any reference in the agreement to "writing" or comparable expressions includes a
reference to facsimile transmission or comparable means of communication (but excluding e-mail
communications);

(b)     words expressed in the singular number shall include the plural and vice versa,
and words expressed in the neuter shall include the feminine and masculine genders and vice versa;

(c)     references to Articles, Sections, Appendixes, Schedules and Recitals are
references to articles, sections, appendixes, schedules and recitals of the Agreement;

(d)     references to "day" or "days" are to calendar days;

(e)     references to the "Agreement" or any other agreement or document shall be
construed as references to the Agreement or, as the case may be, such other agreement or document as the
same may have been, or may from time to time be, amended or supplemented; and

11

(f)     "include," "includes," and "including" are deemed to be followed by "without limitation" whether or not they are in fact followed by such words or words of similar import.

24.     Schedules and Exhibits. The Recitals, Appendixes and Schedules to the Agreement are incorporated into and form an integral part of the Agreement. If an Appendix or Schedule is a form of agreement, such agreement, when executed and delivered to the parties thereto, shall constitute a document independent of the Agreement.

**[Signature page follows.]**

IN WITNESS WHEREOF, each of the Plan Support Parties has caused the Agreement to be executed and delivered, including, where applicable, by its duly authorized officer, as of the date first above written.

**DUNKIN 36:**
Dunkin 36 LLC

By:
Name:
Title:

Dunkin 36 1 LLC

By:
Name:
Title:
Address:
Fax:

Dunkin 36 2 LLC

By:
Name:
Title:
Address:
Fax:

BH:

Name: Behrooz Hedvat
Address:
Fax:

FH:

Name: Fahrmarz Hedvat
Address:
Fax:

PH:

Name: Payam Farahan
Address:
Fax:

**SUBORDINATED LENDER:**
Covenant Asset Resources Ltd.

By:
Name: Abraham Talassazan
Title: Managing Member
Address: 487 Seventh Avenue, N.Y., N.Y. 10018
Fax: (212) 971-4001

~~BRT:~~ HWH
~~BRT Realty Trust~~ HWH Uptown LLC

By:
Name:
Title:
Address:
Fax:

**SPONSOR:**
Dunkin Lender LLC

By:
Name:
Title:
Address:
Fax:

IN WITNESS WHEREOF, each of the Plan Support Parties has caused the Agreement to be executed and delivered, including, where applicable, by its duly authorized officer, as of the date first above written.

DUNKIN 36:
Dunkin 36 LLC

By:_____
Name:
Title:


Dunkin 36 1 LLC

By:_____
Name:
Title:
Address:
Fax:


Dunkin 36 2 LLC

By:_____
Name:
Title:
Address:
Fax:

BH:

_____
Name:  Behrooz Hedvat
Address:
Fax:

FH:

_____
Name:  Fahrmarz Hedvat
Address:
Fax:

PH:

_____
Name:  Payam Farahan
Address:
Fax:


SUBORDINATED LENDER:
Covenant Asset Resources LLC

By:_____
Name:
Title:
Address:
Fax:


HWH:
HWH Uptown LLC

By:_____
Name:  Loanie Halpour
Title:  Vice President
Address: 60 Cutter Mill Road Sut303
                                    Great Neck NY
Fax: 516 684-4925

SPONSOR:
Dunkin Lender LLC

By:_____
Name:
Title:
Address:
Fax:


Signature page – Plan Support and Acceptance Agreement

**IN WITNESS WHEREOF**, each of the Plan Support Parties has caused the Agreement to be executed and delivered, including, where applicable, by its duly authorized officer, as of the date first above written.

DUNKIN 36:
Dunkin 36 LLC

By:_____
Name:
Title:

Dunkin 36 1 LLC

By:_____
Name:
Title:
Address:
Fax:

Dunkin 36 2 LLC

By:_____
Name:
Title:
Address:
Fax:

BH:

_____
Name: Behrooz Hedvat
Address:
Fax:

FH:

_____
Name: Fahrmarz Hedvat
Address:
Fax:

PH:

_____
Name: Payam Farahan
Address:
Fax:

SUBORDINATED LENDER:
Covenant Asset Resources LLC

By:_____
Name:
Title:
Address:
Fax:

HWH:
HWH Uptown LLC

By:_____
Name:
Title:
Address:
Fax:

SPONSOR:
Dunkin Lender LLC

By:_____
Name: J. Joseph Jacobson
Title: Authorized Person
Address: 55 East 59th St, 17th Fl, New York, NY
Fax: (212) 759-8980

Signature page – Plan Support and Acceptance Agreement

# Appendixes and Schedules

Appendix A     Plan of Reorganization
Appendix B     Disclosure Statement
Appendix C     Ballot
Appendix D     Bridgebar Agreement

Schedule 7(d)   Amounts and descriptions of claims of Participating Creditors
Schedule 8(b)   Certain Changes
Schedule 8(c)   Designated Contract
Schedule 8(g)   Environmental Claims
Schedule 8(k)   ERISA Plans
Schedule 8(l)   Certain charges

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

In re:

          **DUNKIN 36 LLC**

                    **Debtor.**

_____

Case No. [_____]

Chapter 11

## BALLOT FOR ACCEPTING OR REJECTING DEBTOR'S
## CHAPTER 11 PLAN OF REORGANIZATION

THE PLAN REFERRED TO IN THIS BALLOT CAN BE CONFIRMED BY THE COURT AND
THEREBY MADE BINDING ON YOU IF IT IS ACCEPTED BY THE HOLDERS OF TWO-
THIRDS IN AMOUNT AND MORE THAN ONE-HALF IN NUMBER OF CLAIMS IN EACH
CLASS AND THE HOLDERS OF TWO-THIRDS IN AMOUNT OF EQUITY INTERESTS IN
EACH CLASS VOTING ON THE PLAN.  IN THE EVENT THE REQUISITE ACCEPTANCES
ARE NOT OBTAINED, THE COURT MAY NEVERTHELESS CONFIRM THE PLAN IF THE
COURT FINDS THAT THE PLAN ACCORDS FAIR AND EQUITABLE TREATMENT TO THE
CLASS REJECTING IT.  TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND
RETURN THIS BALLOT.

**(if equity interest holder)**  The undersigned, the holder of _____ (describe type) in
equity interest of the above-named Debtor, registered in the name of _____.

**(if debtholder or other claim holder)**  The undersigned, HWH Uptown LLC, the holder of a claim in
excess of $16,100,000 secured by First mortgages on the Debtors' Real Property

**(if holder of general claim)**  The undersigned, a creditor of the above-named Debtor in the unpaid
principal amount of $_____.

       **(Check One):**       _X_   **ACCEPTS**       ___   **REJECTS**

The Chapter 11 Reorganization Plan of the above-named Debtor.

**DATED:  December 30, 2010**

HWH UPTOWN LLC

By: _Lonnie Halpern_
      **Lonnie Halpern,**
      **Vice President**
      **60 Cutter Mill Road, Suite 303**
      **Great Neck New York**

Appendix C

In re:

Case No. [_____]

DUNKIN 36 LLC

Chapter 11

Debtor.

## BALLOT FOR ACCEPTING OR REJECTING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

THE PLAN REFERRED TO IN THIS BALLOT CAN BE CONFIRMED BY THE COURT AND THEREBY MADE BINDING ON YOU IF IT IS ACCEPTED BY THE HOLDERS OF TWO-THIRDS IN AMOUNT AND MORE THAN ONE-HALF IN NUMBER OF CLAIMS IN EACH CLASS AND THE HOLDERS OF TWO-THIRDS IN AMOUNT OF EQUITY INTERESTS IN EACH CLASS VOTING ON THE PLAN. IN THE EVENT THE REQUISITE ACCEPTANCES ARE NOT OBTAINED, THE COURT MAY NEVERTHELESS CONFIRM THE PLAN IF THE COURT FINDS THAT THE PLAN ACCORDS FAIR AND EQUITABLE TREATMENT TO THE CLASS REJECTING IT. TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT.

(if equity interest holder) The undersigned, the holder of _____ (describe type) in equity interest of the above-named Debtor, registered in the name of _____.

(if debtholder or other claim holder) The undersigned, the holder of Four Hundred Fifty Thousand $450,000. subordinate mortgage claim of the above-named Debtor, with a stated maturity date of October 1, 2010"

(Check One):        X ACCEPTS        ___ REJECTS

the First Amended Chapter 11 Reorganization Plan, as modified, for the reorganization of the above-named Debtor.

DATED: December ___, 2010

Print or Type Name
Covenant Asset Resources Ltd.

Signed by:

By: Abraham Talassazan, President

Address:        485 Seventh Avenue, New York, N.Y. 10018

RETURN THIS BALLOT TO:

Marilyn Simon, Esq.
Marilyn Simon & Associates
Attorneys for Debtor
110 East 59th Street, 23rd Floor
New York, New York 10022
(212) 759-7909

# Appendix C

**RETURN THIS BALLOT TO:**

Marilyn Simon, Esq.
Marilyn Simon & Associates
Attorneys for Debtor
110 East 59th Street, 23rd Floor
New York, New York 10022
(212) 759-7909

## Schedule 7(d)
## Amounts and descriptions of claims of Participating Creditors

| Name | Amount of Claim | Description of Claim |
| --- | --- | --- |
| HWH Uptown LLC | $16,100,000 | Notes secured by First mortgages on the Real Property owned by Dunkin 36 LLC, Dunkin 36 I LLC and Dunkin 36 II LLC |
| Covenant Asset Resources LLC | $450,000 | Note secured by subordinate mortgages on the Real Property owned by Dunkin 36 LLC, Dunkin 36 I LLC and Dunkin 36 II LLC |



# EXHIBIT 2

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re    <u>Dunkin 36 II LLC</u>                               Case No. _____

                                    Debtor(s)            Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

        Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or chapter 9*] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | *Amount of claim [if secured, also state value of security]* |
| NYC Dept. of Finance<br>345 Adams Street, 3rd Floor<br>Legal Affairs, Devora Cohn<br>Brooklyn, NY 11201 | NYC Dept. of Finance<br>345 Adams Street, 3rd Floor<br>Legal Affairs, Devora Cohn<br>Brooklyn, NY 11201 | | | 27,556.02 |
| Vorillas, Inc.<br>36-08 30th Avenue<br>Astoria, NY 11103 | Vorillas, Inc.<br>36-08 30th Avenue<br>Astoria, NY 11103<br>718-721-8585 | | | 2,489.74 |
| Consolidated Edison of NY<br>Bankruptcy Unit<br>4 Irving Place<br>New York, NY 10003 | Consolidated Edison of NY<br>Bankruptcy Unit<br>4 Irving Place<br>New York, NY 10003<br>212-243-1900 | | | 1,758.17 |
| NYC Water Board<br>PO Box 410<br>Church Street Station<br>New York, NY 10008-0410 | NYC Water Board<br>PO Box 410<br>Church Street Station<br>New York, NY 10008-0410 | | | 1,115.85 |
| Tap Development Corp.<br>36-08 30th Avenue<br>Astoria, NY 11103 | Tap Development Corp.<br>36-08 30th Avenue<br>Astoria, NY 11103<br>718-721-8844 | | | 500.00 |
| Able Fire Prevention<br>241 West 26th Street<br>New York, NY 10001 | Able Fire Prevention<br>241 West 26th Street<br>New York, NY 10001<br>212-633-6279 | | | 254.00 |
| Eden George Exterminating<br>6625 Avenue M<br>Suite 3<br>Brooklyn, NY 11234 | Eden George Exterminating<br>6625 Avenue M<br>Suite 3<br>Brooklyn, NY 11234<br>917-214-5433 | | | 220.00 |
| Empower NY<br>1304 Avenue M<br>2nd Floor<br>Brooklyn, NY 11230 | Empower NY<br>1304 Avenue M<br>2nd Floor<br>Brooklyn, NY 11230<br>212-822-3420 | | | 210.00 |

B4 (Official Form 4) (12/07) - Cont.
In re   **Dunkin 36 II LLC**

Case No. _____

Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5)<br><br>Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| ALC Group LLC<br>121 West 27th Street<br>Suite 402<br>New York, NY 10001 | ALC Group LLC<br>121 West 27th Street<br>Suite 402<br>New York, NY 10001<br>888-466-3620 | | | 150.00 |
| Exact Meter Reading<br>408 E. 175th Street<br>Bronx, NY 10457 | Exact Meter Reading<br>408 E. 175th Street<br>Bronx, NY 10457<br>718-731-6802 | | | 105.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Managing Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date **December 30, 2010**          Signature   **/s/ Behrooz Hedvat**
                                                 **Behrooz Hedvat**
                                                 **Managing Member**

*Penalty for making a false statement or concealing property*: Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.



**EXHIBIT 3**

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
☐ a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **Georgia O'Neal vs. Dunkin 36 LLC II and Lucky Ho Lee Chinese Restaurant 101561/09** | **Personal Injury lawsuit**<br><br>**Attorney for Plaintiff - Georgia O'Neal Michael L. Salomon, Esq. Law Offices of Zemsky & Salomon, P.C. 95 Front Street Hempstead, NY 11550 (516) 485-3800**<br><br>**Attorney for Defendant - Lucky Ho Lee Chinese Restaurant Havkins Rosenfeld Ritzert & Varriale LLP 1065 Avenue of the Americas New York, NY 10018 (212) 488-1598**<br><br>**Attorney for Dunkin 36 LLC II**<br><br>**Lester Schwab Katz & Dwyer LLP 120 Broadway New York, NY 10271-0071 (212) 964-6611** | **Supreme Court of the State of New York County of New York** | |

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| Georgia O'Neal vs. Dunkin 36 LLC II and Lucky Ho Lee Chinese Restaurant TS-300685-09/NY | Supreme Court Transfer | New York County Civil Court | |

Attorney for Plaintiff - Georgia O'Neal
Michael L. Salomon, Esq.
Law Offices of Zemsky & Salomon, P.C.
95 Front Street
Hempstead, NY 11550
(516) 485-3800

Attorney for Defendant - Lucky Ho Lee Chinese Restaurant
Havkins Rosenfeld Ritzert & Varriale LLP
1065 Avenue of the Americas
New York, NY 10018
(212) 488-1598

Attorney for Dunkin 36 LLC II -
Lester Schwab Katz & Dwyer LLP
120 Broadway
New York, NY 10271-0071
(212) 964-6611



EXHIBIT 4

In re  **Dunkin 36 LLC**                                                                      Case No. _____
_____
Debtor(s)

# EXHIBIT 4 - UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
| --- | --- |
| Albania Arias<br>611 West 171 Street<br>Apt. 52B<br>New York, NY 10032 | Lease for 1 bedroom apartment, July 1, 2010 through June 30, 2012, $551.88 per month. Deposit on hand is $428.09. |
| Anselmo Gil<br>611 West 171 Street<br>Apt. 22A<br>New York, NY 10032 | Lease for 2 bedroom apartment, February 1, 2010 through January 31, 2011, $1,934.96 per month. Deposit on hand is $800. |
| Antonio M. Martinez<br>611 West 171 Street<br>Apt. 41A<br>New York, NY 10032 | Lease for 1 bedroom apartment, October 1, 2009 through September 30, 2010, $1,673.35 per month. Deposit on hand is $1,166.50. |
| Aquamarina<br>4060 Broadway<br>New York, NY 10032 | Store 1, lease for restaurant, dated July 27, 2001 through July 31, 2011, $4,550.45 per month. Deposit on hand is $7,400. |
| Arelis Luna<br>611 West 171 Street<br>Apot. 54B<br>New York, NY 10032 | Lease for 2 bedroom apartment, February 1, 2009 through January 31, 2011, $919.84 per month. Deposit on hand is $672.75. |
| Austin W. Haight<br>611 West 171 Street<br>Apt. 34B<br>New York, NY 10032 | Lease for 2 bedroom apartment, January 1, 2009 through December 31, 2010, $2,182.19 per month. No deposit on hand. |
| Bao Guanhu<br>611 West 171 Street<br>Apt. 3A<br>New York, NY 10032 | Lease for 1 bedroom apartment, December 1, 2008 through November 30, 2009, $1,020.98 per month. Deposit on hand is $925. |

Sheet 1 of 5 total sheets in Schedule of
Executory Contracts and Unexpired Leases

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES
(Continuation Sheet)

| NAME AND MAILING ADDRESS,<br>INCLUDING ZIP CODE,<br>OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND<br>NATURE OF DEBTOR'S INTEREST. STATE<br>WHETHER LEASE IS FOR NONRESIDENTIAL<br>REAL PROPERTY.  STATE CONTRACT<br>NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| Burong Hu<br>611 West 171 Street<br>Apt. 43A<br>New York, NY 10032 | Lease for 1 bedroom apartment, February 2, 2010 through January 31, 2011, $1,944.46 per month. Deposit on hand is $1,125.  Which name is legal - Burong Hu or Qiangfeng Zhang? |
| Calla Vicky LLC<br>4060 Broadway<br>Attn: Yin Yan<br>New York, NY 10032 | Commercial lease.  Store 2.  Calla Vicky LLC (Nail Salon), dated December 1, 2003 through November 30, 2013, $2,256.76 per month.  Deposit on hand, $3,780. |
| Caricia Medina<br>611 West 171 Street<br>Apt. 41B<br>New York, NY 10032 | Lease for 1 bedroom apartment, December 1, 2009 through November 30, 2011, $617.12 per month.  Deposit on hand is $508.54. |
| Carlos Soto<br>611 West 171 Street<br>Apt. 4B<br>New York, NY 10032 | Lease for 2 bedroom apartment, dated June 1, 2009 through May 31, 2011, $1,631.22 per month.  Deposit on hand, $1,300. |
| Carmen Reyes<br>611 West 171 Street<br>Apt. 23B<br>New York, NY 10032 | Lease for 2 bedroom apartment, December 1, 2008 through November 30, 2010, $1,214.39 per month.  Deposit on hand is $920.92. |
| Danilo Polanco<br>611 West 171 Street<br>Apt. 52A<br>New York, NY 10032 | Lease for 2 bedroom apartment, February 1, 2009 through January 30, 2011, $651.27 per month.  Deposit on hand is $566.27. |
| Dulce M. Felix<br>611 West 171 Street<br>Apt. 22B<br>New York, NY 10032 | Lease for 1 bedroom apartment, August 1, 2010 through July 31, 2012, $1,511.30 per month.  No deposit. |
| E&L Enterprises Service Center<br>4066 Broadway<br>Attn: Alberto Moto<br>New York, NY 10032 | Commercial lease for Store 5, a travel agency.  Lease dated July 1, 2004 through August 31, 2010, $3,653.37 per month. Deposit on hand, $6,119.28. |
| Edyl Ponce<br>611 West 171 Street<br>Apt. 51A<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated July 1, 2010 throug June 30, 2012, $660.69 per month.  Deposit on hand, $568.03. |

Sheet 2 of 5 total sheets in Schedule of
Executory Contracts and Unexpired Leases

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES
### (Continuation Sheet)

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| Evelyn Corona<br>611 West 171 Street<br>Apt. 3B<br>New York, NY 10032 | Lease for 2 bedroom apartment, dated November 1, 2009 through October 31, 2011, $1,438.68 per month. Deposit on hand, $823.97. |
| Frinet Camejo<br>611 West 171 Street<br>Apt. 42B<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated April 2, 2010 through March 31, 2011, $833.34 per month. Deposit on hand, $563.78. |
| Highpoint Wireless<br>4064 Broadway<br>New York, NY 10032 | Commercial lease for Store 3, a wireless & communications retail store. Lease dated July 13, 2006 through July 31, 2011, $2,339.70 per month. Deposit on hand, $4,000. |
| Juan E. Leonzo<br>611 West 171 Street<br>Apt. 32B<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated May 1, 2009 through April 30, 2011, $777.68 per month. Deposit on hand, $552.26. |
| Julia Picas<br>611 West 171 Street<br>Apt. 43B<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated December 1, 2009 through November 30, 2011, $647.79 per month. Deposit on hand, $471.47. |
| Lyudmila Penchukova<br>611 West 171 Street<br>Apt. 53A<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated November 1, 2009 through October 31, 2010, $1,100 per month. Deposit on hand, $1,100. |
| Manuel V. & Thelma Munoz<br>611 West 171 Street<br>Apt. 1A<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated April 1, 2009 through March 31, 2011, $841.91 per month. Deposit on hand, $756.91. |
| Maria & Edith Camejo<br>611 West 171 Street<br>Apt. 44B<br>New York, NY 10032 | Lease for 2 bedroom apartment, dated November 1, 2009 through October 31, 2011, $924.11 per month. Deposit on hand, $787.12. |
| Maritza I. Astacio<br>611 West 171 Street<br>New York, NY 10032 | Lease for commercial store. Store A. Lease dated September 30, 2001 through October 31, 2010, $2,924.64 per month. Deposit on hand, $4,900. |

Sheet 3 of 5 total sheets in Schedule of
Executory Contracts and Unexpired Leases

In re __Dunkin 36 LLC__

Debtor(s)

Case No. _____

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES
(Continuation Sheet)

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| Milagros Santos<br>611 West 171 Street<br>Apt. 32A<br>New York, NY 10032 | Lease for 2 bedroom apartment, dated September 1, 2009 through August 31, 2011, $671.60 per month. Deposit on hand, $480. |
| Nicola J. Leach<br>611 West 171 Street<br>Apt. 2A<br>New York, NY 10032 | Lease for 2 bedroom apartment, dated December 1, 2008 through Novmeber 30, 2010, $1,500 per month. Deposit on hand, $1,500. |
| Nikos II Inc.<br>4064 Broadway<br>Attn: Nicholas Laourdakis<br>New York, NY 10032 | Commercial lease for Store 4, selling cosmetics, toiletries, and perfumes. Lease dated April 1, 2001 through March 31, 2011, $4,862.37 per month. Deposit on hand, $5,000. |
| Nilda Ortiz<br>611 West 171 Street<br>Apt. 2B<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated April 1, 2010 throgh March 31, 2012, $793.33 per month. No deposit on hand. |
| Ramona Diaz<br>611 West 171 Street<br>Apt. 33A<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated June 1, 2010 through May 31, 2011, $677.18 per month. Deposit on hand, $677.18. |
| Renato Mena<br>611 West 171 Street<br>Apt. 24B<br>New York, NY 10032 | Lease for 2 bedroom apartment, dated September 1, 2009 through August 31, 2011, $1,024.07 per month. Deposit on hand, $625.32. |
| Rosa Madera<br>611 West 171 Street<br>Apt. 31A<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated April 1, 2009 through March 31, 2011, $826.38 per month. Deposit on hand, $556.28. |
| Rosario M. Castillo<br>611 West 171 Street<br>Apt. 21B<br>New York, NY 10032 | Lease for 1 Bedroom apartment, dated November 1, 2008 through October 31, 2010, $1,570.15 per month. Deposit on hand, $1,040.99. |
| Sandra V. Lopez<br>611 West 171 Street<br>Apt. 1B<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated February 2, 2010 through January 31, 2011, $1,070.32 per month. No deposit on hand. |

Sheet 4 of 5 total sheets in Schedule of
Executory Contracts and Unexpired Leases

Best Case Bankruptcy

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES
(Continuation Sheet)

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
| --- | --- |
| Siliva Ruiz<br>611 West 171 Street<br>Apt. 51B<br>New York, NY 10032 | Lease for 1 bedroom apartment, dated April 1, 2009 through March 31, 2011, $782.62 per month. Deposit on hand, $697.01. |
| Superintendent - Ray<br>611 West 171 Street<br>New York, NY 10032 | Super of building, 1 bedroom apartment  No monthly rent. |
| T-Mobile (Antenna)<br>611 West 171 Street<br>New York, NY 10032 | Lease for antenna....need more info, address invoices go to, etc. Lease dated September 1, 2001 through August 31, 2008, $3,062.33 per month. Deposit on hand, $1,500. |
| Travis J. Speck<br>611 West 171 Street<br>Apt. 21A<br>New York, NY 10032 | Lease for 1 Bedroom apartment, dated July 1, 2010 through June 30, 2011, $1,454.64 per month. Deposit on hand, $1,140. |
| Vista Media<br>611 West 171 Street<br>New York, NY 10032 | Lease for signs space.  Monthly rent is $375. |
| Xu Dong Zhao<br>611 West 171 Street<br>Apt. 42A<br>New York, NY 10032 | Lease for 2 bedroom apartment, dated February 2, 2010 through January 31, 2011, $1,624.10 per month.  Deposit on hand, $1,358.50. |
| Yuris F. Garcia<br>611 West 171 Street<br>Apt. 53B<br>New York, NY 10032 | Lease for 2 bedroom apartment, dated August 1, 2009 through July 31, 2011, $819.27 per month. Deposit on hand, $490.05. |

Software Copyright (c) 1996-2009 Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy



**EXHIBIT 5**

## EXHIBIT 5 – DEBORS' MANAGEMENT

Behrooz Hedvat

Managing Member of the Debtors since their formation. He has extensive experience in the acquisition and management of real estate for the past 5 years. He has managed the operations of the Debtors since the acquisition of the real property located in New York, New York. He has agreed not to take any draw from the Debtors operations in an effort to aid the emergence successfully from the chapter 11 cases. All decisions regarding the Debtors' operations stores will be made by Mr. Hedvat.

# EXHIBIT 6

## EXHIBIT 6


## CERTIFIED COPY OF RESOLUTIONS
## ADOPTED BY THE MEMBER OF DUNCAN 36 II LLC


I, Behrooz Hedvat, the managing member of Duncan 36 I LLC (the "Company"), do hereby certify that the following resolutions were duly adopted by the Company at a special meeting of the members of the Company held on December 30, 2010, and such resolutions have not been amended or rescinded and are now in full force and effect:

"RESOLVED, that the Company be and it hereby is authorized to file a case under Chapter 11 of Title 11 of the United States Code, and it hereby is, approved; and it is

FURTHER RESOLVED, that Behrooz Hedvat is authorized and directed to file on behalf of the Company, the original petition under Chapter 11 of Title 11 of the United States Code; and it is

FURTHER RESOLVED, that the appropriate member of the Company be, and such member hereby is, authorized and directed to retain on behalf of the Company, Marilyn Simon & Associates, as bankruptcy counsel, to render legal services to, and to represent, the Company in connection with such proceeding and other related matters in connection therewith, on such terms as such officer shall approve; and it is

FURTHER RESOLVED, that the appropriate member of the Company be, and such member hereby is, authorized and directed to retain on behalf of the Company, such other professionals in connection with the chapter 11 case on such terms as such member shall deem appropriate; and it is

FURTHER RESOLVED, that the appropriate member or members of the Company be, and each of them hereby is, authorized and directed to take any and all such further action and to execute and deliver any and all such further instruments and documents and to pay all such expenses, in each case as in his, her or their judgment shall be necessary or desirable in order fully to carry out the intent and accomplish the purposes of the resolutions adopted herein; and it is

FURTHER RESOLVED, that all acts lawfully done or actions lawfully taken by any member(s) of the Company in connection with

the reorganization of the Company or any matter related thereto, or by virtue of these resolutions are hereby in all respects ratified, confirmed and approved."

WITNESS my hand and seal of the Company this 30th day of December, 2010

Behrooz Hedyat
Managing Member